UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
AZRIA WILLIAMS and MICHELLE LEE,

                          Plaintiffs,

-against-

THE CITY OF NEW YORK;  Detective KEVIN MAZZA (Shield #007861), Undercover Detective C0044, and Police Officers "JOHN DOES" Nos. 1, 2, 3, etc. (whose identities are unknown but who are known to be personnel of the New York City Police Department), all of whom are sued individually and in their official capacities,

                          Defendants.
------------------------------------------------------------------X

15-cv-05702 (GHW)

**FIRST AMENDED COMPLAINT**

**Jury Trial Demanded**

Plaintiffs AZRIA WILLIAMS and MICHELLE LEE by and through their attorneys Beldock Levine & Hoffman LLP, for their complaint against the defendants named above allege as follows:

**PRELIMINARY STATEMENT**

1.    This civil rights action seeks redress under 42 U.S.C. § 1983 and New York State Law for injuries PLAINTIFFS sustained from the unconstitutional conduct of defendants THE CITY OF NEW YORK, Detective KEVIN MAZZA (Shield #007861), Undercover Detective C0044, and Police Officers "JOHN DOES" Nos. 1, 2, 3, etc.

2.    On or about the early morning of November 21, 2014, defendant police officers arrested PLAINTIFFS without reasonable suspicion or probable cause to believe that they were engaged in illegal activity.  PLAINTIFFS were returning to WILLIAMS's apartment after buying sandwiches and cigarettes from neighborhood delis when a Hispanic male, upon information and belief Undercover Detective C0044, stopped them and asked for a light.  That

1

person attempted to strike up a conversation with WILLIAMS and asked him if he knew where he could get some drugs.  WILLIAMS responded that he did not "mess" with drugs and the male hurried away.  PLAINTIFFS were then confronted by several plain clothes police officers running towards them, brandishing guns, and yelling at them to put their hands up.  PLAINTIFFS complied and were searched by the police officers.  Even though there was no legal basis for the search and even though nothing illegal was found on PLAINTIFFS, the police officers falsely arrested them and charged them with baseless drug related offenses.  As a result of the defendant police officers' false and unlawful conduct, LEE was imprisoned for approximately three (3) days and WILLIAMS for approximately six (6) days.  The baseless charges against PLAINTIFFS were ultimately dismissed.

3.       PLAINTIFFS seek (i) compensatory damages for loss of liberty, physical injury, psychological and emotional distress, and financial loss caused by the illegal actions of the defendants; (ii) punitive damages to deter such intentional or reckless deviations from well-settled constitutional law; and (iii) such other and further relief, including costs and attorney's fees, as this Court deems equitable and just.

## JURISDICTION

4.       Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(a)(3) and (a)(4), as this action seeks redress for the violation of plaintiffs' constitutional and civil rights.

5.       Supplemental jurisdiction is conferred upon this Court by 28 U.S.C. § 1367(a), over any and all state constitutional or common law claims that are so related to the federal claims within the original jurisdiction of this Court that they form part of the same case or controversy.

**VENUE**

6.      Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2), as this is the judicial district in which the events giving rise to PLAINTIFFS' claims took place.

**JURY DEMAND**

7.      PLAINTIFFS demand a trial by jury in this action on each and every one of their claims for which jury trial is legally available.

**PARTIES**

8.      Plaintiff AZRIA WILLIAMS ("WILLIAMS") is an African-American citizen of the United States. He was at all times relevant to this complaint a resident of Bronx County, City and State of New York.

9.      Plaintiff MICHELLE LEE ("LEE") is an African-American citizen of the United States. She was at all times relevant to this complaint a resident of Kings County, City and State of New York.

10.     Defendant THE CITY OF NEW YORK ("CITY") is a municipal entity created and authorized under the laws of the State of New York.  It is authorized under the laws of the State of New York to maintain the New York City Police Department ("NYPD"), which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The CITY assumes the risks and obligations incidental to the maintenance of a police force and the employment of police officers. The NYPD's operations include the operations described herein.

11.     Defendants NYPD Detective KEVIN MAZZA (Shield #007861) ("MAZZA"), Undercover Detective C0044 ("C0044"), and Police Officers "JOHN DOES" Nos. 1, 2, 3, etc. ("DOES"), are NYPD Police Officers who unlawfully detained, frisked, and arrested

PLAINTIFFS without suspicion of any illegal activity, lodged false criminal charges against them, and caused them to be searched and maliciously prosecuted. Upon information and belief, defendants MAZZA, C0044, and DOES are still police officers.

12.     At all times relevant herein, defendants MAZZA, C0044, and DOES acted under color of state law in the course and scope of their duties and/or functions as agents, employees, and/or officers of the CITY and/or the NYPD, and incidental to the lawful pursuit of their duties as agents, employees, and/or officers of the City and/or the NYPD.

13.     At all times relevant herein, defendants MAZZA, C0044, and DOES acted under color of state law in the course and scope of their duties and/or functions as agents, employees, and/or officers of the CITY and/or the NYPD, and incidental to the lawful pursuit of their duties as agents, employees, and/or officers of the CITY and/or the NYPD.

14.     At all times relevant herein, defendants MAZZA, C0044, and DOES violated clearly established rights and standards under the Fourth and Fourteenth Amendments to the United States Constitution and under equivalent New York State constitutional provisions, of which reasonable police officers in their respective circumstances would have known.

## COMPLIANCE WITH NEW YORK GENERAL MUNICIPAL LAW

15.     PLAINTIFFS personally served Notices of Claim upon the City on January 12, 2015, within ninety days of the events giving rise to their claims.

16.     More than thirty days have elapsed since PLAINTIFFS served their Notices of Claim and the CITY has neglected and refused to adjust or pay PLAINTIFFS' claims.

17.     This action is filed within one year and ninety days of the events giving rise to PLAINTIFFS' claims.

**FACTUAL ALLEGATIONS**

18. WILLIAMS and LEE have been companions for approximately five years.

19. On the night of November 20, 2014, LEE was present with WILLIAMS at WILLIAMS' apartment at 2321 Southern Boulevard, Bronx, New York.

20. At approximately 11:45 p.m., WILLIAMS and LEE left WILLIAMS' apartment to go to a deli on 187th Street and Beaumont Avenue.

21. When WILLIAMS and LEE arrived at the deli, they ordered sodas and sandwiches from an attendant at the deli's twenty-four hour window.

22. WILLIAMS attempted to buy a pack of Newport cigarettes, but the deli did not have them in stock.

23. While WILLIAMS was finishing his order at the deli, he was approached by a Hispanic male who asked WILLIAMS if he had a light.

24. WILLIAMS told the male that he did not.

25. LEE and WILLIAMS then proceeded to another deli at 187th Street and Prospect Avenue.

26. WILLIAMS walked ahead of LEE and entered the deli at 187th Street and Prospect Avenue by himself.

27. Unbeknownst to LEE, the male who had asked WILLIAMs for a light followed her as she walked towards the deli WILLIAMS had entered.

28. WILLIAMS purchased a pack of Newport cigarettes and exited the deli.

29. While he was exiting the deli, WILLIAMS took out a cigarette and lit it.

30. Once outside the deli, WILLIAMS saw LEE and the male who had asked him for a light standing a short distance away from her.

31. The male approached WILLIAMS and asked if he could now get a light from him.

32. WILLIAMS gave the male a light and asked why he was bothering them and why he did not just get matches from a deli.

33. The male responded, in sum and substance, that he thought WILLIAMS was going to "get something," and that he wanted "something."

34. WILLIAMS responded that he did not know what the male was talking about.

35. WILLIAMS and LEE then proceeded to walk towards Southern Boulevard to return to WILLIAMS' apartment.

36. The male followed WILLIAMS and LEE and continued to talk to them.

37. WILLIAMS stopped walking and asked the male why he was following them.

38. The male asked WILLIAMS, in sum and substance, if WILLIAMS knew where he could get some drugs.

39. WILLIAMS responded, in sum and substance, that he did not "mess" with drugs and that he did not know where the male could get drugs.

40. The male then asked WILLIAMS if he could get another light because his cigarette had gone out.

41. WILLIAMS wanted to get away from the male and gave him his lit cigarette.

42. WILLIAMS and LEE started to walk away from the male.

43. The male asked WILLIAMS if he wanted his cigarette back.

44. WILLIAMS responded that he did not and continued walking away.

6

45. The Hispanic male who confronted and spoke with PLAINTIFFS, was, upon information and belief, an undercover police officer, identified and sued herein as Undercover Detective C0044.

46. WILLIAMS looked back to see if the male was still following them and saw that the male was now walking away from them at a fast pace.

47. Immediately thereafter, WILLIAMS and LEE saw several police officers in plain clothes in front of them, brandishing guns running towards them.

48. The police officers yelled at WILLIAMS and LEE to drop everything and put their hands up.

49. While this was happening, cars and vans pulled up in front of WILLIAMS and LEE and plain clothes officers displaying police shields exited the vehicles.

50. LEE dropped the bag with the sandwiches and sodas and put her hands up.

51. WILLIAMS also put his hands up.

52. When the police officers reached WILLIAMS and LEE, they violently spun them around and forced them face first into a brick wall.

53. Police officers began searching WILLIAMS and LEE.

54. A male police officer performed a pat-down search of LEE.

55. WILLIAMS asked the police officers why they had stopped them.

56. The police officers responded, in sum and substance, "Don't worry about it… Just keep your hands up…"

57. LEE asked the police officers why they were searching them.

58. The police officers responded, in sum and substance, "We'll tell you in a minute."

7

59. The police officers looked through the shopping bag LEE was carrying with the sandwiches and sodas they had just bought and threw its contents on the ground.

60. The police officers emptied WILLIAMS' and LEE's pockets.

61. One of the police officers removed LEE's asthma inhaler from her pants pocket and threw it on the ground.

62. The police officers did not find anything illegal on WILLIAMS or LEE.

63. Even though the police officers did not find anything illegal on WILLIAMS or LEE, they placed them in handcuffs.

64. One of the police officers took WILLIAMS' wallet and put it in an envelope.

65. WILLIAMS and LEE were then placed in a van that contained approximately seven other arrestees.

66. WILLIAMS and LEE were transported to the 41st Precinct.

67. At the 41st Precinct, WILLIAMS and LEE were both subjected to being strip searched.

68. The strip search of LEE was performed by a male police officer.

69. WILLIAMS and LEE were then placed in separate holding cells where they remained for several hours.

70. While confined in a holding cell, LEE requested to use the bathroom.

71. A male police officer responded by removing LEE out of the holding cell and taking her to a bathroom.

72. The police officer told LEE to use the bathroom and to leave the door open while she used it.

73. LEE used the bathroom while the bathroom door remained open and the male police officer waited outside.

74. While confined in the holding cell, WILLIAMS asked one of the police officer when they would be released.

75. WILLIAMS was taking medication for conditions including diabetes and anxiety disorder and was concerned about not being able to take his medication as prescribed.

76. The police officer told WILLIAMS, in sum and substance, not to worry because they did not have anything on them.

77. WILLIAMS suffered from anxiety, nausea, pain, and weakness as a result of being arrested, held in custody, and not having access to his medication.

78. WILLIAMS asked a police officer if he could be taken to the hospital because he was feeling ill.

79. The police officer told WILLIAMS that if he was taken to the hospital it would significantly delay his release.

80. Because of the officer's advice, WILLIAMS withdrew his request to go to the hospital.

81. Still confined in a holding cell, LEE also asked a police officer to go to the hospital.

82. LEE suffers from asthma, anxiety, depression, diabetes and other ailments.

83. The police officer told LEE that if she was taken to the hospital it would significantly delay her release.

84. Because of the officer's advice, LEE withdrew her request to go to the hospital.

85.     WILLIAMS and LEE were taken to Bronx Central Booking in the early hours of the morning of November 21, 2014.

86.     At Bronx Central Booking, WILLIAMS and LEE continued to suffer anxiety and feel sick as a result of being deprived of their medications.

87.     WILLIAMS was eventually allowed to call his mother so he could ask her to bring his medications to him at his arraignment.

88.     WILLIAMS and LEE spent over two days waiting to be arraigned at Bronx Central Booking.

89.     WILLIAMS and LEE eventually saw lawyers at Bronx Central Booking.

90.     WILLIAMS and LEE learned for the first time that they were being charged with criminal sale and possession of narcotics when they saw their respective lawyers at Bronx Central Booking.

91.     LEE were arraigned in the afternoon on November 23rd; WILLIAMS was arraigned later that evening.

92.     Plaintiffs were each charged with Criminal Sale of a Controlled Substance in the 3rd degree (PL 220.39(1)), Criminal Possession of a Controlled Substance in the 3rd degree (PL 220.16(1)), and Criminal Possession of a Controlled Substance in the 7th Degree (PL 220.03).

93.     The criminal court complaint, falsely stated that WILLIAMS asked an undercover officer, "How many do you want?" and that the officer replied, "I need two."

94.     The criminal court complaint falsely states that WILLIAMS then walked away for a brief period, while LEE remained with the undercover officer.

95. The criminal court complaint falsely states that WILLIAMS then returned with two zip lock bags, each purportedly containing crack cocaine, which he gave to the undercover police officer in exchange for twenty dollars pre-recorded United States currency.

96. The charges made against WILLIAMS and LEE in the criminal court complaint were maliciously lodged by the individual defendants, were without probable cause, and were lacking in any legal justification.

97. WILLIAMS and LEE were also provided with Notice Pursuant to CPL 710.30(a)(b) that purported them to have been identified in a "Show Up" identification procedure that took place in the vicinity of 187th Street and Crotona Avenue at 2:40 a.m. on November 21, 2014.

98. WILLIAMS and LEE were not the subjects of a show up identification procedure on November 21, 2014.

99. At the conclusion of her arraignment, on November 23, 2014, LEE was released on her own recognizance.

100. WILLIAMS had bond set at $1,500 and was taken to Vernon C. Bain Correctional Center.

101. At the Vernon C. Bain Correctional Center, WILLIAMS was given a medical exam and finally given medication to treat his anxiety, depression, diabetes, and other medical conditions.

102. WILLIAMS and LEE returned to Bronx County Criminal Court on November 26, 2014.

103. On that day, all of the criminal charges against WILLIAMS and LEE were dismissed and the case sealed.

11

104. PLAINTIFFS were not engaged in any activities that were in violation of any law during the events described above and defendants had no probable cause to arrest them.

105. At all times relevant herein, the individual defendant police officers were engaged in a joint venture. The individual police officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during the said events.

106. Defendants' conduct caused PLAINTIFFS to suffer loss of liberty, physical pain and suffering, emotional and psychological pain and suffering, embarrassment, humiliation, harm to their reputation and deprivation of their constitutional rights.

## FIRST CAUSE OF ACTION
**42 U.S.C. § 1983 – Violations of Fourth and Fourteenth Amendment Rights**

107. PLAINTIFFS reallege and incorporate by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

108. In committing the acts and omissions complained of herein, defendants acted under color of state law to deprive PLAINTIFFS of certain constitutionally protected rights under the Fourth and Fourteenth Amendments to the United States Constitution, including, but not limited to:

    a. the right to be free from unreasonable search and seizure of their persons;

    b. the right to be free from arrest without probable cause;

    c. the right to be free from false imprisonment, that being wrongful detention without good faith, reasonable suspicion, or legal justification, of which detention PLAINTIFFS were aware and to which they did not consent;

    d. the right to be free from the lodging of false criminal charges against them by police officers, including on information and belief, by some or all of the Individual Defendants;

    e.  the right to be free from malicious prosecution by police officers, that being prosecution without probable cause instituted with malice and ultimately terminated in PLAINTIFFS' favor; and

    f.  the right to be free from deprivation of liberty without due process of law.

109.   In committing the acts and omissions complained of herein, defendants MAZZA, C0044, and DOES breached their affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.

110.   As a direct and proximate result of defendants MAZZA's, C0044's, and DOES' deprivation of PLAINTIFFS' constitutional rights, PLAINTIFFS suffered the injuries and damages set forth above.

111.   The unlawful conduct of defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

## SECOND CAUSE OF ACTION
### Violations of the New York State Constitution

112.   PLAINTIFFS reallege and incorporate by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

113.   Such conduct breached the protections guaranteed to PLAINTIFFS by the New York State Constitution including, but not limited to, Article I, Secs. 6 and 12, and including the following rights:

    a.  the right to be free from unreasonable search and seizure of their persons;

    b.  the right to be free from arrest without probable cause;

    c. the right to be free from false imprisonment, that being wrongful detention without good faith, reasonable suspicion, or legal justification, of which detention PLAINTIFFS were aware and to which they did not consent;

    d. the right to be free from the lodging of false criminal charges against them by police officers, including on information and belief, by some or all of the Individual Defendants;

    e. the right to be free from malicious prosecution by police officers, that being prosecution without probable cause instituted with malice and ultimately terminated in PLAINTIFFS' favor; and

    f. the right to be free from deprivation of liberty without due process of law.

114. The deprivation of PLAINTIFFS' rights under the New York State Constitution resulted in the injuries and damages set forth above.

### THIRD CAUSE OF ACTION
### Assault and Battery

115. PLAINTIFFS reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

116. Defendants MAZZA, C0044, and DOES, without just cause, wilfully and maliciously used physical force against PLAINTIFFS causing them injuries.

117. Defendants MAZZA, C0044, and DOES committed the foregoing acts intentionally, wilfully, and with malicious disregard for PLAINTIFFS' rights, and are therefore liable for punitive damages.

### FOURTH CAUSE OF ACTION
### False Imprisonment

118. PLAINTIFFS reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

119.  Defendants MAZZA, C0044, and DOES, through the foregoing acts, caused PLAINTIFFS to be wrongfully detained without good faith, reasonable suspicion, or legal justification, of which detention PLAINTIFFS were aware and to which they did not consent.

120.  Defendants MAZZA, C0044, and DOES committed the foregoing acts intentionally, willfully, and with malicious disregard for PLAINTIFFS' rights and are therefore liable for punitive damages.

## FIFTH CAUSE OF ACTION
### Malicious Prosecution

121.  PLAINTIFFS reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

122.  Defendants MAZZA, C0044, and DOES, through the foregoing acts, maliciously commenced a criminal proceeding against PLAINTIFFS, which ended in their favor, without probable cause to believe PLAINTIFFS were guilty of the crimes charged or any crimes.

123.  Defendants MAZZA, C0044, and DOES committed the foregoing acts intentionally, willfully, and maliciously, and are therefore liable for punitive damages.

## SIXTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress

124.  PLAINTIFFS reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

125.  Defendants MAZZA, C0044, and DOES, through the foregoing acts, did commit extreme and outrageous conduct and thereby intentionally, and/or recklessly caused PLAINTIFFS to experience severe mental and emotional distress, pain, suffering, and damage to name and reputation.

126. Defendants MAZZA, C0044, and DOES committed the foregoing acts intentionally, willfully, and with malicious disregard for PLAINTIFFS' rights and are therefore liable for punitive damages.

## SEVENTH CAUSE OF ACTION
### Negligent Infliction of Emotional Distress

127. PLAINTIFFS reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

128. As police officers acting in the performance of their duties, defendants MAZZA, C0044, and DOES owed PLAINTIFFS a duty of care.

129. In breach of that duty, defendants MAZZA's, C0044's, and DOES' foregoing conduct endangered PLAINTIFFS' safety and caused them to fear for their safety.

130. As a result, PLAINTIFFS suffered emotional distress.

## EIGHTH CAUSE OF ACTION
### *Respondeat Superior*

131. PLAINTIFFS reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

132. At all relevant times, defendants MAZZA, C0044, and DOES were employees of the City and were acting within the scope of their employment.

133. The CITY is therefore vicariously liable under the common law doctrine of *respondeat superior* for the actions of defendants MAZZA, C0044, and DOES set forth herein.

## **DEMAND FOR RELIEF**

**WHEREFORE**, PLAINTIFFS demand the following relief against the defendants, jointly and severally:

(a) compensatory damages in an amount just and reasonable and in conformity with the evidence at trial;

(b) punitive damages from defendants NYPD Police Officers MAZZA, C0044, and DOES to the extent allowable by law;

(c) attorney's fees;

(d) the costs and disbursements of this action;

(e) interest; and

(f) such other and further relief as this Court deems just and proper.

Dated: New York, NY
May 6, 2015

BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, Suite 2600
New York, New York 10016
(212) 490-0400


    /s/Marc A. Cannan
Myron Beldock (MB-4076)
Marc A. Cannan (MC-0513)
*Attorneys for Plaintiffs*